**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| EMMANUEL ALEXANDER GARCIA TREJOS,<br><br>Petitioner,<br><br>v.<br><br>JOSHUA JOHNSON, et al.,<br><br>Respondents. | No. 5:26-cv-04328-DSR<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS AND ORDERING IMMEDIATE RELEASE** |

## 1.    INTRODUCTION AND PROCEDURAL BACKGROUND

On July 31, 2026, Petitioner Emmanuel Alexander Garcia Trejos ("Petitioner"), a noncitizen who has been detained in Immigration and Customs Enforcement ("ICE") custody since May 5, 2026, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition") challenging his ongoing detention as violative of, inter alia, his right to due process.  See Doc. No. 1.  The Petition names as Respondents the Warden of the Desert View Facility where Petitioner is presently detained, the Secretary of the United States Department of Homeland Security, the Attorney General of the United States, the Acting Director of ICE, and the Director of the Los Angeles Field Office of ICE, each in his or her official capacity (collectively "Respondents").  Id.  Petitioner seeks relief in the form of a Writ of Habeas Corpus ordering his release from immigration custody, or in the alternative, ordering a bond hearing pursuant to 8 U.S.C. § 1226(a).  Id., prayer ¶ 3.

Concurrently with filing the Petition, Petitioner also voluntarily consented under 28 U.S.C. § 636 to have a Magistrate Judge conduct all further proceedings in this case, including trial and entry of judgment.  See Doc. No. 4.  The case became fully consented three days later pursuant to the United States Attorney's Office's General Consent to Disposition by Magistrate Judge in Immigration Habeas Cases.  See General Order 26-05 at Ex. "A" (Doc. No. 5); see also Doc. 9.

On August 2, 2026, the Clerk of Court served the Petition on Respondents pursuant to General Order No. 26-05, along with a Notice of that General Order.  See Doc. No. 6.  On August 10, 2026, Respondents filed their Answer to the Petition.  See Doc. No. 8.  In their Answer, Respondents do not dispute any of the facts alleged in the Petition nor attempt to justify their re-detention of Petitioner without a bond hearing.  See generally id.  Rather, they contend that "Petitioner appears to be entitled to request and receive an initial bond hearing pursuant to Rodriguez Vasquez v. Bostock, --- F.4th ---, 2026 WL 2196424 (9th Cir. 2026) (finding 'that aliens present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A).')."  Id. at 2:4-8.  On that basis, Respondents argue that Petitioner is "at most" entitled to an order from the Court that he receive a bond hearing before an Immigration Judge under 8 U.S.C. § 1226(a).  Id. at 2:15-18.

The Court has read and considered all papers filed by each side.  For the reasons discussed below, the Court **GRANTS** the Petition for Writ of Habeas Corpus and orders that Respondents immediately release Petitioner from immigration custody.

## 2.    BACKGROUND

### A.    Factual Background

The Court sets forth a summary of the relevant factual background based on the facts alleged in the Petition.  Respondents had the opportunity to dispute the facts alleged in the Petition, but declined to do so.  See Doc. No. 8.  Accordingly,

the facts alleged in the Petition are undisputed and have been conceded by Respondents.  See C.D. Cal. L.R. 7-12.

Petitioner is a native and citizen of Nicaragua.  Pet. at ¶ 1.  On August 20, 2023, he entered the United States via the Miami International Airport.  Id.  That same day, immigration authorities released Petitioner into the United States on humanitarian parole pursuant to 8 U.S.C. § 1182(d)(5)(A).  Id.

Petitioner's "I-213 Narrative" indicates that Petitioner was arrested by Miami police on May 5, 2026, for "LICENSE ALTER."  See Doc. No. 1 at ECF p. 28.  Petitioner alleges that he "was repairing a motorcycle, and test drove it to make sure that the motorcycle was functioning correctly.  The license plate had an issue with the screw, and Miami Police stopped him and turned him over to ICE."  Pet. at ¶ 1.  Petitioner was transferred from Miami, Florida to ICE's Desert View Facility in Adelanto, California, where he is presently detained.  Id. at ¶ 2.

On July 28, 2026, Petitioner requested a custody redetermination hearing before an Immigration Judge ("IJ") at the Adelanto Immigration Court.  Id. at ¶¶ 2, 4.  The IJ denied Petitioner's request on the grounds that the IJ lacked jurisdiction over the bond hearing pursuant to the Board of Immigration Appeal's decision in Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025).  See Pet., Ex. "B" (July 28, 2026, Order of the Immigration Judge).

**B.     Claims For Relief Sought**

The Petition asserts three claims for relief: (1) violation of his statutory right to a bond determination under 8 U.S.C. § 1226(a), (2) that application of 1225(b)(2) to bar Petitioner from receiving a custody redetermination hearing violates the Administrative Procedure Act, and (3) that his re-detention without a bond determination hearing violates his right to due process under the Fifth Amendment.  See generally Pet. at ¶¶ 38-47.

3

**3.      LEGAL STANDARD AND THE EXHAUSTION REQUIREMENT**

Habeas relief extends to those who can show they are "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  Although Congress has barred courts from reviewing certain discretionary decisions concerning detention or release of noncitizens subject to removal proceedings, see 8 U.S.C. §§ 1226(e), 1252(g), federal courts retain jurisdiction to "review related 'constitutional claims or questions of law.'"  Martinez v. Clark, 36 F.4th 1219, 1224 (9th Cir. 2022) (quoting Singh v. Holder, 638 F.3d 1196, 1202 (9th Cir. 2011)), vacated on other grounds by ___ U.S. ___, 144 S. Ct. 1339, 218 L.Ed.2d 418 (2024).  Petitioner makes such reviewable claims here, and Respondents do not contest the point.

Habeas petitioners seeking relief under 28 U.S.C. § 2241 generally must first exhaust all available administrative remedies.  See Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012).  However, because this requirement is "prudential" and not a "jurisdictional prerequisite," it is subject to waiver.  Id. at 1045-46; Arango Marquez v. INS, 346 F.3d 892, 897 (9th Cir. 2003) ("[T]he district court properly waived exhaustion, because the exhaustion requirement in § 2241 cases is prudential, rather than jurisdictional.").  Here, neither Petitioner nor Respondents address the exhaustion requirement in their papers.  See generally Doc. Nos. 1, 8.  Thus, the Court finds that any failure by Petitioner to exhaust administrative remedies in this matter (if there was one) is not a bar to this Petition.  The Court therefore proceeds to consider the merits of the Petition.

**4.      DISCUSSION**

**A.      Petitioner's Re-Detention Violates Due Process**

Petitioner argues that his May 5, 2026, re-detention without a custody re-determination hearing violates the Due Process Clause of the Fifth Amendment.  See Pet. at ¶¶ 44-47.  Respondents do not offer an opposing argument.  See generally Answer.  Such failure can be deemed consent to granting the relief

4

requested.  See Local Rule 7-12.  Nevertheless, the Court will analyze Petitioner's due process claim on its merits.

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law.  See U.S. Const. amend. V.  There is no question that these protections extend to noncitizens present in the United States.  See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (per curiam) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)).  Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ."  Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).  "In the context of immigration detention, it is well-settled that 'due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint.'"  Id. at 990 (quoting Singh, 638 F.3d at 1203).

"A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections."  Brewster v. Bd. of Ed., 149 F.3d 971, 982 (9th Cir. 1998).  The first step is to determine whether the individual possesses a liberty or property interest that triggers due process protections.  Board of Regents v. Roth, 408 U.S. 564, 569 (1972).  If such a constitutionally protected interest exists, the second step applies a three-step balancing test described in Mathews v. Eldridge to assess what procedural safeguards are required.  Mathews v. Eldridge,

5

424 U.S. 319, 334-35 (1976). Only after establishing a constitutionally protected interest does the analysis proceed to the second step.

i. **Petitioner Has a Constitutionally Protected Liberty Interest in His Release on Humanitarian Parole**

It is uncontroverted that on August 20, 2023, Petitioner was released by immigration authorities into the United States on humanitarian parole pursuant to 8 U.S.C. § 1182(d)(5)(A). See Pet. at ¶ 1.

"Many district courts in the Ninth Circuit have concluded that non-citizens paroled into the United States pursuant to § 1182(d)(5) have a liberty interest in their continued release[.]" Chavarria v. Chestnut, No. 1:25-cv-01755-DAD-AC, 2025 WL 3533606, at *3 (E.D. Cal. Dec. 9, 2025) (collecting cases); Noori v. Larose, 807 F.Supp.3d 1146, 1163-64 (S.D. Cal. 2025) (finding that petitioner who was paroled from immigration detention under § 1182(d)(5)(A) had a protected liberty interest in remaining out of custody); Lugos v. Mullin, No. 2:25-cv-018980-KES, 2026 WL 1250264, at *3 (C.D. Cal. May 1, 2026) ("Petitioner's nearly two years of parole in the United States and the connections Petitioner made with his community during that time create a significant liberty interest that is protected by the Due Process Clause") (citation and internal quotation marks omitted). Indeed, "the government's decision to release an individual from custody creates an implicit promise, upon which that individual may rely, that their liberty will be revoked only if they fail to live up to the conditions of release." Pinchi v. Noem, 792 F. Supp.3d 1025, 1032 (N.D. Cal. 2025) (internal quotation marks, brackets, and ellipses omitted). This "liberty is valuable and must be seen as within the protection of the [Due Process Clause]." Morrissey v. Brewer, 408 U.S. 471, 482 (1972).

This Court agrees with those cited above that the Petitioner has a constitutionally protected liberty interest in his release on humanitarian parole, of which he was deprived when Respondents re-detained him. Respondents do not

dispute the point.  The question then becomes whether Respondents complied with due process in revoking that interest.

### ii.   Respondents' Deprivation of Petitioner's Liberty Interest Failed to Comply with the Requirements of Due Process

To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge.  See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)).  Under Mathews, courts balance the following three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").  Here, the balance favors Petitioner.

### a.   Private Interest

Petitioner's private interest is substantial.  As discussed above, Petitioner has a recognized interest in his liberty under the terms of his humanitarian parole.  "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."  United States v. Salerno, 481 U.S. 739, 755 (1987).  "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty [the Due Process Clause] protects."  Id. at 690.  As such, the first Mathews factor weighs strongly in Petitioner's favor.

#### b.    Risk of Erroneous Deprivation

Regarding the second Mathews factor, the risk of erroneous deprivation of that interest through the procedures used is significant because there do not appear to have been any procedures used to determine whether there were grounds to revoke Petitioner's humanitarian parole.  According to the Petition, Petitioner has been denied an opportunity to contest the basis for his re-detention before a neutral decisionmaker.  See Pet. at ¶ 47.  Respondents do not contest this allegation.  See generally Answer.

Civil immigration detention is "nonpunitive in purpose and effect" and is permissible only to reduce the risk of flight or danger to the community.  Zadvydas, 533 U.S. at 690.  "In releasing Petitioner on humanitarian or significant public benefit parole," the Government "necessarily found Petitioner did not pose a significant flight risk or danger to the community."  Medrano-Rocha v. Santacruz, 817 F.Supp.3d 871, 879 (C.D. Cal. 2026) (citing 8 C.F.R. § 212.5(b)).

Respondents contend that "Petitioner is properly detained pending [] potential bond proceedings because Petitioner was redetained due to a material change of circumstance, specifically Petitioner was arrested for 'LICENSE ALTER.'" See Answer at 2:13-15.  Petitioner's arrest – which apparently was based on some problem with a screw on a license plate on a motorcycle Petitioner was test riding after repairing it – may constitute changed circumstances justifying revocation of his humanitarian parole.  However, it also may not justify such revocation.  That question is the entire point of requiring notice and an opportunity to be heard before Petitioner was deprived of his substantial liberty interest in his humanitarian parole release.  A pre-deprivation hearing would require the government to produce its evidence of changed circumstances and give Petitioner an opportunity to challenge that evidence.  This is a significant procedural safeguard.  Without written notice and a meaningful, individualized hearing, "the risk of an erroneous deprivation of liberty is high because neither the government

8

nor [Petitioner] has had an opportunity to determine whether there is any valid basis for his detention."  Fernandez v. Semaia, No. 5:25-CV-03412-SPG-MBK, 2026 WL 136229, at *5 (C.D. Cal. Jan. 13, 2026).  As one court has reasoned:

> ICE revoked Petitioner's release at a scheduled check-in based solely on internal ATD entries, without prior written notice, without specifying the alleged violations in advance, and without any meaningful opportunity to be heard.  [Citations omitted].  Proceeding on untested contractor and agency records, with no mechanism for explanation or correction, creates a significant risk of error.  Moreover, Petitioner had previously been found suitable for humanitarian parole, which requires that a noncitizen "present neither a security risk nor a risk of absconding[.]"  [Citation omitted].  A brief pre-deprivation hearing would have substantial value in testing both the factual and legal basis for re-detention.

Asad v. Noem, No. 26-cv-620, 2026 WL 775628, at *3 (W.D. Wash. Mar. 19, 2026).  Similarly here, a pre-deprivation hearing would have substantial value in testing whether the issue with the license-plate screw on the motorcycle justified revoking Petitioner's humanitarian parole.  Thus, the second Mathews factor similarly favors Petitioner in this case.

### c.    Government Interest

Regarding the third Mathews factor, Respondents do not assert any countervailing interest.  "The government interest in immigration enforcement in general is surely substantial." Zerezghi v. United States Citizenship & Immigr. Servs., 955 F.3d 802, 810 (9th Cir. 2020).  As in Zerezghi, however, that is not the interest that needs to be weighed in this case.  The government interest at issue here is revocation of humanitarian parole and re-detaining Petitioner pending the

outcome of removal proceedings, and doing so without any hearing.  Court's have routinely recognized that such interest is "low."  See, e.g., Medrano-Rocha, 817 F.Supp.3d at 879; Omer G. G. v. Kaiser, 815 F.Supp.3d 1098, 1111 (N.D. Cal. 2025); Morales v. U.S. Immigr. and Customs Enf't, et al., 5:26-cv-01404-DOC-MAR, 2026 WL 1026234, at *5 (C.D. Cal. Apr. 15, 2026); Ramazan M. v. Andrews, No. 1:25-cv-01356-KES-SKO (HC), 2025 WL 3145562, at *7 (E.D. Cal. Nov. 10, 2025).  "This is particularly so where the Government has not shown — or, as here, attempted to substantively argue — that Petitioner's detention serves either to prevent flight or a danger to the community."  Gourav v. Janecka, et al., No. EDCV 26-01253-MWF (DSR), 2026 WL 966568, at *3 (C.D. Cal. Apr. 7, 2026) (internal quotations and citations omitted).

Thus, the Matthews balance tips decidedly in favor of Petitioner on this record.  The Court therefore concludes that the revocation of Petitioner's humanitarian parole and resulting re-detention on May 5, 2026, without notice or a pre-deprivation hearing, violated his procedural due process rights.  See, e.g., Mourey v. Bowen, 2026 WL 467567, at *4 (C.D. Cal. Jan. 31, 2026) ("Pursuant to the holding in Mathews, Petitioner should have been afforded a pre-detention hearing."), report and recommendation adopted, 2026 WL 464788 (C.D. Cal. Feb. 17, 2026); Fernandez Lopez, 2025 WL 2959319, at *6 ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing, which should have been provided before she was detained."); Maldonado Vazquez v. Feeley, 805 F. Supp. 3d 1112, 1148 (D. Nev. 2025) ("Where, as here, a noncitizen is detained after having been ordered released, without any process provided by the Government for challenging his continued detention, detention becomes arbitrary and violates due process.").  Habeas relief is appropriate on that basis

### iii.    Immediate Release is the Appropriate Remedy

Given that Petitioner has established that his re-detention violated his due process rights, the Court further concludes that "Petitioner's release is necessary to

return him to the status quo." <u>Nazarian v. Noem</u>, No. 5:25-cv-2694-KK-ADS, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025).  The status quo is "the last uncontested status which preceded the pending controversy." <u>GoTo.com, Inc. v. Walt Disney Co.</u>, 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks omitted).  The last uncontested status here is Petitioner's release on his humanitarian parole before his current re-detention.  <u>See</u> <u>Nazarian</u>, 2025 WL 3236209, at *7 ("The last uncontested status in this case is Petitioner's release on his second OSUP before his current re-detention.").  "Accordingly, Petitioner's release from custody is the appropriate remedy." <u>Id.</u>; <u>see</u> <u>Esmail v. Noem</u>, No. 2:25-cv-8325-WLH-RAO, 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025) ("Providing Petitioner an interview <u>ex post facto</u>, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process.  The fact that he was not given an interview renders his detention unlawful in the first place, necessitating his release.").

Restoring Petitioner to the status quo also means release under the same conditions that were in place before the wrongful deprivation of that status.  For the same reason that Respondents may not revoke Petitioner's parole without affording Petitioner due process, they also may not change the conditions of that release without affording Petitioner due process.  This does not mean that Respondents can never change the conditions of Petitioner's release – only that they have to follow due process in doing so.  Finally, return to the status quo similarly means return to Petitioner any personal property and documents seized at the time of his re-detention

### B.    Petitioner's Remaining Claims and Requests for Relief

Because the Court concludes that Petitioner is entitled to release on due-process grounds, it is unnecessary to reach his alternative arguments under 8 U.S.C. § 1226(a) and the APA.  <u>See generally</u> Pet. at ¶¶ 38-43.

11

Finally, the Court notes that Petitioner also requested an award of reasonable attorney's fees and costs under the Equal Access to Justice Act.  Id., prayer ¶ 5.  The Court will consider requests for costs and attorney's fees upon compliance with Local Rules 54-2 (costs) and 54-7 (attorney's fees).

**5.    ORDER**

Petitioner is presently in custody of Respondents in violation of the Constitution or laws or treaties of the United States; thus, a Writ of Habeas Corpus should issue pursuant to 28 U.S.C. § 2241.

**IT IS THEREFORE ORDERED** that:

1.  The Petition for Writ of Habeas Corpus is **GRANTED**.

2.  Respondents shall immediately release Petitioner **EMMANUEL ALEXANDER GARCIA TREJOS (A-Number 232-841-783)** from custody and reinstate his release under the same conditions that were in place before his re-detention on May 5, 2026.

3.  Respondents shall also provide Petitioner with a copy of this Order at or near the time of release.

4.  Within three days of the date of this Order, Respondents shall file a status report confirming Petitioner's release.

5.  The Court will issue on a separate form Judgment consistent with this Order.  Any fee motion must be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412, and this Court's Local Rules.  The Court retains jurisdiction to adjudicate any collateral enforcement issues.

IT IS SO ORDERED.

DATED: August 12, 2026    _____

HON. DANIEL S. ROBERTS
UNITED STATES MAGISTRATE JUDGE

12